Good morning, your honors, and may it please the court. My name is Margaret Farron. I'm with the Federal Public Defender's Office. I'm appearing today on behalf of the defendant and appellant, Donovan Romo. I'd like to reserve two minutes for rebuttal, please, and I'll be sure to watch my time. Mr. Romo's supervised release condition 11 takes a definition of sexually explicit conduct intended to be read in conjunction with child sexual abuse statutes that are limited to actual minors and obscene material, or obscene material, and it broadens that definition to include depictions of non-obscene sexual conduct involving adults and apparently even artistic or virtual depictions that do not involve real-life human subjects at all. Counsel, as to condition 11, I want to go straight there. On the issue of whether or not it's vague, is that something that Mr. Romo has waived at this point? Well, your honor, I don't think so. It was certainly not intentionally omitted from the statute, correct? It was omitted, but it was not intentionally omitted. But at the same time, it... Regardless of whether it was intentionally omitted or not, it was omitted, and if it was omitted, then shouldn't we just indicate that Mr. Romo has waived that argument, that line of reasoning? That's an option that's available to the court, but it certainly is not something that the court must do. Yesterday, I filed a 28-J letter identifying Supreme Court authority saying that when a constitutional issue going to the validity of a provision is implicated by the briefing and identified by the court, it's proper and appropriate to order supplemental briefing from the parties. And now we've both had an opportunity to address this issue at some length. We had 3,000 words each. We're here at oral argument to discuss it. But when you did provide that supplemental briefing, you really tied it to your First Amendment argument, and aren't we really talking about a Fifth Amendment sort of due process argument here? So I actually would like to direct Your Honor to Sinanang-Smith, which is something the government has raised. There was an addendum in that case where the court said, you know, sometimes we actually do order supplemental briefing on constitutional issues, maybe not directly raised, but implicated by the party's arguments. I think that's the... And that was said to be proper in Sinanang-Smith. And I think that's what's... I'm sorry, Your Honor, but I think that is what's at issue here, because the reason that we have vagueness is because of the First Amendment problem that was briefed below and on appeal. Can I ask, is your vagueness challenged? Does it necessarily implicate the vagueness of the statutes themselves that were referenced in the condition? No, Your Honor. It implicates the vagueness of Condition 11. These vagueness issues are not implicated when 2256 is put into a substantive criminal prohibition on child sexual abuse, because those statutes make clear you need an actual minor. There's not a question of that. In fact, I think that's the reason that this definition doesn't talk about or address that issue of whether you need an actual person or not, because normally that requirement and that limitation is supplied by the substantive criminal prohibition. So what... Can you drill down a little bit? What is the vagueness issue here? Is it that it's actual versus simulated adult sexual conduct is unconstitutionally vague because of what? As applied in this condition, it's unconstitutionally vague because it's not clear whether artistic or virtual depictions of actual sexual conduct are actual sexually explicit conduct or simulated sexually explicit conduct. That is the relevant line of demarcation for Mr. Romo between what he's prohibited from having and what he can have. What about the government's argument in its supplemental brief that the regulations implementing these statutes key off of the Williams Supreme Court decision, which excludes artistic things such as film and television, where it's not actual. Someone might be simulating or pretending that it's sexual conduct, but it's not actual conduct. Your Honor, I don't think the Williams definition or the CFR definition gets at this question at all. There's nothing in any of those provisions that says actual means real people, real life, and simulated means art. All that Williams and CFR talk about is something engaged in by performers, so that's sort of presupposing actual people. Performers engaging in conduct that makes you think it's actually occurring. Williams says that definition of simulated doesn't include R-rated movies. If you look at Williams, Justice Scalia says R-rated movies are not even within that definition of simulated because everyone who watches an R-rated movie knows that that's not really happening. That definition of simulation doesn't include a lot of artistic material, but at the same time we know that this condition does apply in some way to artistic material because Nerkey said so. Nerkey said that 2256, as incorporated to adults, includes artistic depictions in artwork in museums. It includes R-rated movies and TV shows like The Wire and Brokeback Mountain, but those are excluded from the Williams definition. What about the list in 2257 H1? Because 2256 2A itself references 2257 H1, if I'm getting the order correct. In H1, that specifies a certain list of activities such as masturbation and other sexual acts that don't seem to represent what you're describing about artistic things or things that you might find in a museum, for example. I'm sorry, Your Honor. 2257 H1 says the term actual sexually explicit conduct means actual but not simulated conduct as defined in 2256 2A. Okay, so I had it reversed. That's okay. So we go to 2256 2A, and it has the list of different acts. Intercourse, bestiality, masturbation, sadistic or masochistic abuse, and then it has lascivious exhibition at the bottom. So I guess my question is why isn't in the combination of those two provisions sufficiently specific for Condition 11 to be understood that Mr. Romo would not be permitted to see actual depictions of something like what was listed in that statute? I think that that kind of gets at the question of what is an actual depiction? It doesn't say actual real life. It doesn't say actual people. And in fact, cases like Ashcroft v. Free Speech Coalition and the Williams case talk about how the reason we know an actual minor is required is because the outside statute says so. It says that you need to have actual or simulated sexually explicit conduct. And we know we need actual minors because the underlying criminal prohibition requires an actual minor. Would that cover anime and AI-generated conduct? I don't see why that wouldn't be included in actual. I mean, it could be included in actual because it is an actual depiction. Actual and simulated focus on whether the act is actually depicted, not on whether an actual person is committing the act, if you think that goes to the definition of, you look up to simulated. Simulated definitely doesn't talk about anime or art because it says you need to have performers. But do you agree that the definitions or descriptions described in the statute are not inclusive? I'm sorry, are not? Of all possible actual activity or simulated activity? Well, I think that this court in Nurkey did interpret basically this, what Nurkey took was a condition that's identical to Mr. Romo's, except it had actual and simulated adult sexually explicit conduct under this definition. And it said that definition as a whole includes artistic depictions and not real life depictions. So the question for Mr. Romo, though, because, okay, we know that that's in there somewhere. Which side of the line does it fall on? Are artistic depictions actual depictions of a sexual act? They could be. You certainly could have. I would think if it's an actual depiction that's not requiring an actual person, you could have an actual depiction in a CGI or a painting or something like that. It certainly doesn't really seem to fall under the CFR simulated definition because that requires a performer. And also in Williams it says that really needs to create a belief by the viewer that it's really happening. And certainly that's not true of CGI. Everyone who looks at a CGI is going to know that this never happened in real life. So that just doesn't fall within the CFRs or the Williams' definition. The question then is where does it fall? And I have to tell you, I've been looking at these definitions for many days and I don't know. And so the question with vagueness is a person like Mr. Romo, you know, who faces possible revocation of his supervised release and re-imprisonment for up to two more years if he misjudges what's actual or what's simulated, he could go back to prison for two years under 3583E. Ms. Friend, do you want to leave a little time for rebuttal? I would, Your Honor. Yes, please. Thank you. Good morning, Your Honors. May it please the Court, my name is Maria Steitler and I'm here on behalf of the government. And I'll start with defendant's vagueness argument also. This argument is both waived and fails on the merits. Defendant did not raise this argument below or in his opening or reply briefs here. As a result, the District Court did not have the opportunity to consider defendant's objections and the government has not had an opportunity to respond in writing to defendant's vagueness arguments. The procedural safeguards associated with vagueness or associated with waiver, excuse me, are especially important here because the defendant does not argue that the term is vague in the context of the child exploitation statutes. Certainly, any ruling by this Court could have ripple effects on those statutes in the future. Ms. Steitler, can I ask, are you aware of other cases that have challenged Condition 11 or something similar to it on vagueness grounds? So, you have NERCI, for example, where Condition 11 was challenged on vagueness grounds as well and the Court rejected that challenge. There's a long history of Ninth Circuit and Supreme Court cases holding that the terms in these two statutes are not vague. Those were as often, some of those cases were as applied to children. But I think that the applied to adults, the analysis would be similar. So, you do have, you know, the Ninth Circuit recognized in Wigand that the term lascivious is not vague. That holding was actually affirmed by the Supreme Court in excitement video. That's 513 U.S. 64 and I cite that because we didn't have an opportunity to respond in our brief. But the Supreme Court has actually affirmed that the term lascivious is not vague. But you're, I take it from your 28-day letter that you believe there's a party presentation problem with counsel not having raised this issue in the briefs. Is it rectified in any way by the supplemental briefing that we asked the parties to address? I do think that supplemental briefing has been helpful, certainly, but it hasn't fully given us an opportunity to respond in its supplemental brief to the arguments the defendant made. For example, I referenced the argument about lascivious exhibition. The government didn't realize that that was coming. It didn't have an opportunity to respond in writing, although we did argue that that term was not vague. And I think about one paragraph of our brief, we didn't have the opportunity to kind of respond to each of the individualized concerns. So let me ask you, assuming that we elect to proceed to sort of the merits of the petitioners of the appellant's argument, would you at least agree that we have here what has been described as a particularly significant liberty interest at stake? No, I don't think so. And that's because in NERCI the court held that because the condition applied only to adult pornography, that there's no significant liberty to view adult pornography. And the condition here is similar, in that given the Supreme Court and the way it has assessed what these terms mean, the terms are limited to kind of obscene or pornographic works. Are the terms sufficient for 2023? Excuse me? Changing technology. Are those terms sufficient in your view? I think that they are sufficient. And I do want to respond to their argument that this is CGI or artistic works. And I think this kind of answers your question. It's actual sexually explicit conduct involving adults. And so the word actual has a meaning, that is it has to be actual. So does the word adults. So this term applies to actual sexually explicit acts of adult human beings, of people. So this isn't a case where cartoons or computer generated imagery could trigger the ban. This is a pretty narrow term that covers actually sexually explicit conduct involving adults. And then I think given that narrowness, there's new technologies, there are new ways of depicting sexual acts certainly. But the fact that there may be kind of different types of technology doesn't render the statute vague or overbroad. That's just the way that these statutes work involving technology. Close cases can be imagined under virtually any statute. And that doesn't render the statute vague or unconstitutional. What tips this over? What in your view, what's the dividing line between these close cases and when it becomes unconstitutionally vague? I think when it's unconstitutionally vague is when the question isn't whether the incriminating fact occurs, but whether you can assess what is being regulated at all or what is being banned at all. And here what's being banned is actual sexually explicit conduct or depictions of actually sexually explicit conduct involving adults. And so it's so long as the parameters aren't vague, the fact that there may be close questions at the margins doesn't render a statute vague. And there's also another safety hatch here. And that's the, this was discussed in NERCI, that's the mens rea requirement for supervised release violations. A defendant has to have the requisite mens rea to violate supervised release. So if he, his response is, I didn't realize that this was actually sexually explicit conduct because it was, you know, it was virtual or it was CGI, then that could be an issue as to mens rea that would be assessed before the district court in any revocation proceeding. So I think ultimately here the vagueness issue is really controlled by Ninth Circuit and other cases. I mentioned Wigand, I think Williams also applies. And then again in NERCI, in Reardon, in other cases where it did involve adults as well, applied the same reasoning from those cases involving children to assess vagueness. And this panel, should this panel feel that it needs to reach the issue, can find, can reject this vagueness challenge on the merits. The rest of the challenges the defendant has raised in this, in the appeal related to the supervised release conditions, given the facts of this case, the three challenge supervised release conditions are all reasonably related to the goals of supervised release, defendant's rehabilitation and deterrence of future conduct. And they're also reasonably necessary to achieve those goals. So unless the court has further questions, we would ask this court to affirm the judgment of the district court. Are there? Yes, my colleagues, any other questions? We have no other questions, thank you. Thank you, Your Honor. Thank you for the additional time, Your Honor. I just wanted to address a couple of the things that the government mentioned. First of all, the contention that seeing adults necessarily would mean actual adults, that's inconsistent with Williams. In Williams, the Supreme Court looked at the pandering statute, which prohibited, well, so it upheld the pandering statute as consistent with the First Amendment. And that pandering statute did two things. It prohibited an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct. And Justice Scalia said, well, okay, that's fine, because first of all, we have obscenity. And the fact that it said involving a minor to Justice Scalia and the majority in Williams did not necessarily mean it needed to involve an actual minor. It said it's the second provision saying an actual minor engaging in sexually explicit conduct that brings us back to the actual minor requirement. So we either need obscenity involving a minor, which could be a virtual minor, or we need a visual depiction of something that's not obscene that involves an actual minor. So I just don't think that in Condition 11, this reference to adults brings us to where we need to be with regard to limiting it to actual people. I just also want to briefly address the idea that this is going to have some kind of a ripple effect on child sexual abuse statutes. The whole reason that we're here on vagueness is because Condition 11 goes way outside the parameters of the First Amendment. In the context of child abuse, child sexual abuse statutes, the First Amendment is a limitation. It requires the use of an actual minor, and the statutes make that abundantly clear. This issue simply doesn't arise. How would you amend Condition 11 to bring it within, to make it constitutionally acceptable? I think that we could, well, I think apart from the problems with what is lascivious and what's in a lascivious exhibition, I think this problem could be solved the way it's solved in 2252 and 2251, saying, involve the depiction of an actual adult, something like that. Or perhaps those definitions could be brought into 2257 and 2257A, but actually I think that the best place to do it would be in Condition 11, which kind of takes the place in this context of the overall enveloping criminal prohibition that normally incorporates 2256. Is that a sentencing commission issue in your view? Well, you know, actually I guess to the extent that this was a sort of standard or recommended condition recommended by the sentencing commission, that would be true, but I don't believe that this is actually. I think that 5D1.3 actually recommends some conditions for sex offenders, and this is not among those conditions. So I think it might be a question for whichever body is drafting these standard conditions. So that's it. Thank you very much. Thank you, Your Honors. Thank you. Thank you, Counsel, for your helpful arguments. The matter will stand submitted.
judges: SANCHEZ, MENDOZA, Jackson